UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KLAIRMONT KORNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 4613 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| FLO, INC., B. RILEY REAL ESTATE, LLC, WAS NILES, LLC, WILLIAM A. SHINER, CYNTHIA M. VINCI, and MICHAEL JERBICH, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Klairmont Korners, LLC brought this lawsuit in the Circuit Court for Cook County, Illinois, against Flo, Inc. and its president, Cynthia Vinci (together, "Flo"), B. Riley Real Estate, LLC and its president, Michael Jerbich (together, "B. Riley"), and WAS Niles, LLC and its manager, William A. Shiner (together, "WAS Niles"), alleging a conspiracy to deprive Klairmont of its leasehold interest in real property in Illinois through misconduct in J.C. Penney's bankruptcy case in the Southern District of Texas. Doc. 1-1. B. Riley removed the suit under 28 U.S.C. § 1452(a), which covers suits falling within the bankruptcy jurisdiction, 28 U.S.C. § 1334. Doc. 1. B. Riley moves to transfer venue to the Southern District of Texas, Doc. 9, and Klairmont and WAS Niles move to remand the suit to state court, Docs. 18, 22. The remand motions are granted, and B. Riley's motion to transfer is denied as moot.

**Background**

J.C. Penney held a ground lease for certain real property owned by Flo in Niles, Illinois. Doc. 1-1 at ¶¶ 12-13, 16. Klairmont was J.C. Penney's subtenant. *Id*. at ¶¶ 15-16, 18.

1

Klairmont's sublease extends through 2032, and it has the right to exercise options for further extensions through 2071. *Id.* at ¶¶ 15, 20-22.

In 2020, J.C. Penney filed for bankruptcy in the Southern District of Texas. *In re J.C. Penney Co.*, No. 20-bk-20182 (Bankr. S.D. Tex. filed May 5, 2020). The bankruptcy court appointed B. Riley as a real estate advisor to J.C. Penney. Doc. 1 at ¶ 18; Doc. 1-1 at ¶ 25; Doc. 29-3. According to Klairmont, B. Riley used its advisory role to conspire with Flo and WAS Niles to eliminate Klairmont's leasehold interest in the Niles property. The details are unimportant for present purposes, but they involved arranging for Flo and/or WAS Niles to pay J.C. Penney to reject its ground lease and turn down Klairmont's offer to acquire that lease. Doc. 1-1 at ¶¶ 26-74. The conspiracy's goal was to terminate Klairmont's sublease and allow WAS Niles to take control of the property. *Id.* at ¶¶ 54, 77.

The bankruptcy court ultimately approved J.C. Penney's rejection of the ground lease, but it did not resolve what effect, if any, the rejection would have on Klairmont's sublease. Doc. 18-5 at p. 2, ¶¶ 1-2 (stating that the court made "no ruling with respect to the rights of any tenant or sub-tenant under applicable nonbankruptcy law"). The court expressed concern over B. Riley's allegedly wrongful conduct but explained that, in the end, J.C. Penney's decision to reject the ground lease reflected sound business judgment. Doc. 18-4 at 104-108. As to the sublease, the court stated, "I think everybody agrees that if I reject the ground lease, then whatever happens [with the sublease], happens. And that is either another proceeding in front of me or some other court of competent jurisdiction." *Id.* at 104. The bankruptcy court added that Klairmont "must file a proof of claim for any … rejection damages" within thirty days. Doc. 18-5 at p. 2, ¶ 4.

Klairmont appealed the bankruptcy court's order. *In re J.C. Penney Direct Mktg. Servs. LLC*, No. 2:21-cv-139 (S.D. Tex. filed July 23, 2021). Klairmont also filed in the bankruptcy court a proof of claim, which seeks over $51 million in the event "it is determined" at some future point that J.C. Penney's rejection of the ground lease resulted in the termination of Klairmont's sublease. Doc. 29-2 at p. 10, ¶ 9. And Klairmont filed the present suit in Illinois state court, which seeks under state law: (1) a declaratory judgment confirming the continuing validity of its sublease and possessory interest in the Niles property; and (2) damages for tortious interference, fraud, breach of the implied warranty of quiet enjoyment, conspiracy, and unjust enrichment. Doc. 1-1 at ¶¶ 78-109.

## Discussion

B. Riley grounds its removal of the suit on Section 1334(b) of Title 28, which provides that "the district courts shall have original … jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see* Doc. 1 at 4-6. Section 1334(c)(1), however, provides that the district court *may* abstain from hearing a suit falling within Section 1334(b) "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1)—which is called "permissive abstention"—and Section 1334(c)(2) *requires* the district court to abstain from hearing such suits under certain circumstances, *id*. § 1334(c)(2)—which is called "mandatory abstention." *See generally In re Seven Fields Dev. Corp.*, 505 F.3d 237, 248-49 (3d Cir. 2007). Whether this suit falls within Section 1334(b) is a close and difficult question. There is no need to decide that question, for even if B. Riley were correct that there is bankruptcy jurisdiction under Section 1334(b) and that abstention is not mandatory under Section 1334(c)(2), permissive abstention is appropriate under Section 1334(c)(1). *See Sinochem Int'l Co. v. Malaysia Int'l*

3

*Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted); *Meyers v. Oeinda Tribe of Indians of Wis.*, 836 F.3d 818, 823 (7th Cir. 2016) ("[T]here are numerous circumstances in which a court appropriately accords priority to a non-merits threshold inquiry other than subject matter jurisdiction, such as … abstention … .").

In deciding whether to exercise its discretion to abstain under Section 1334(c)(1), the court must consider these twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (alteration in original). "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Ibid*. Under the facts and circumstances of this case, the factors overwhelmingly favor abstention.

As to the first factor, abstention will have a negligible (if any) effect on the efficient administration of J.C. Penney's bankruptcy estate. The bankruptcy court already has confirmed J.C. Penney's Chapter 11 plan and issued a final decree, leaving open only a new lead case for the purpose of adjudicating Chapter 5 avoidance actions and claim objections. Docs. 18-2, 18-6.

4

Although Klairmont's appeal of the bankruptcy court order approving J.C. Penney's rejection of the ground lease remains pending, its claims in the present suit assume the continuing validity of that order and thus do not turn on the outcome of the appeal. It follows that allowing an Illinois state court to address the parties' "residual dispute[s]" regarding the status of Klairmont's sublease and Defendants' conduct in procuring J.C. Penney's rejection of the ground lease will not impact whatever remains of the bankruptcy court's administration of J.C. Penney's estate. *See Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019) ("There is no reason why this residual dispute about tax penalties should stick with the bankruptcy judge, who otherwise is done with the case, rather than the specialist judges in the Tax Court."); *In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (upholding a bankruptcy court's modification of an automatic stay to allow a state court case to proceed, reasoning that the bankruptcy court had "no particular expertise under th[e] narrow area of state law" presented by that case and "[t]he state courts would have expertise in deciding these issues promptly").

Pressing the opposite view, B. Riley argues any damages award secured by Klairmont in this case would interfere with the administration of J.C. Penney's estate because the estate is obligated—under the bankruptcy court order appointing B. Riley as a real estate advisor—to indemnify B. Riley for claims arising from its conduct as an advisor. Doc. 29 at 21-23; *see* Doc. 29-3 at p. 5, ¶ 7 (provision of the bankruptcy court order requiring indemnification). That argument is unpersuasive. As an initial matter, the prospect of J.C. Penney's having to indemnify B. Riley is remote; Klairmont's damages claims against B. Riley are grounded on the allegation that it engaged in "actual fraud, willful misconduct, or gross negligence," Doc. 1-1 at ¶ 77, and J.C. Penney's indemnification obligation expressly excludes any "claim or expense that is … judicially determined … to have arisen from [B. Riley's] gross negligence, fraud, … bad

5

faith or willful misconduct," Doc. 29-3 at p. 5, ¶ 7(b).  In any event, if Klairmont obtains a money judgment against B. Riley, the Illinois state court could enter that judgment and leave adjudication of J.C. Penney's potential indemnification obligation to the bankruptcy court, thus ensuring that court's predominant role in administering J.C. Penney's estate.  *See Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d at 1189 (contemplating that abstention could result in "judgments … entered in state court with enforcement left to the bankruptcy court").

The second, third, sixth, and eighth factors, which address the nature of Klairmont's claims, also favor abstention.  Klairmont brings only state law claims, and those claims predominate over any conceivable bankruptcy law issues that could arise in this suit.  Indeed, as noted, the bankruptcy court recognized that the status of Klairmont's sublease in light of J.C. Penney's rejection of the ground lease will be decided "under applicable nonbankruptcy law."  Doc. 18-5 at p. 2, ¶ 2 (citing 11 U.S.C. § 365(h)).  The bankruptcy court further observed that any misconduct by B. Riley had no bearing on its approval of J.C. Penney's rejection of the ground lease.  Doc. 18-4 at 104-108.  Thus, although B. Riley's allegedly tortious conduct occurred in the context of a bankruptcy proceeding, Klairmont's state law claims are remote and easily severed from any conceivable bankruptcy law issues presented by those claims.  *See In re L&S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) ("[T]he presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration.").  Finally, although B. Riley asserts that "the state-law theories that Klairmont advances involve well developed areas of law," Doc. 29 at 27, it cites no case addressing comparable disputes under Illinois law or, in particular, any case considering whether a sublease like Klairmont's can survive the rejection of a lease like J.C. Penney's.  The Illinois courts thus have the predominant

6

interest in the resolution of those issues. *See Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d at 1189 ("[W]hether a case involves unsettled issues of state law is always significant.").

The fourth, tenth, and eleventh factors, which concern this suit's procedural posture, also favor abstention. Klairmont brought the suit in state court, and B. Riley's removal, together with its motion to transfer the suit to the Southern District of Texas, indicates forum shopping on its part. *See In re U.S. Brass Corp.*, 110 F.3d 1261, 1265 (7th Cir. 1997) ("Eljer itself can hardly plead innocent to the charge of forum shopping that it hurls against its opponents. It removed the insurers' cases from state to federal court … . Its last-ditch effort to transfer the cases to Texas is another transparent effort at forum shopping."). Moreover, Klairmont demands a jury trial on its claims, Doc. 1-1 at ¶ 110, and it has such a right at least for its damages claims. *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38; *Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("Legal remedies [requiring a jury trial] traditionally involve money damages … .").

The fifth factor, lack of another jurisdictional basis for removal, likewise favors abstention. Having invoked only the bankruptcy jurisdiction, B. Riley forfeited any argument that some other basis for federal jurisdiction supports removal. *See Bush*, 939 F.3d at 844 ("Other grants of jurisdiction also may apply. … But the parties disregard [them], and so shall we."); *Gavin v. AT&T Corp.*, 464 F.3d 634, 640-41 (7th Cir. 2006) (holding that the defendants forfeited the invocation of diversity jurisdiction to support removal because "the removal petition does not mention diversity" and "[n]either defendant asked us to retain jurisdiction on the basis of diversity"). And the twelfth factor—the presence of nondebtor parties—also favors abstention, as the parties to this case are exclusively nondebtors.

Even if the two remaining factors—the seventh and ninth—favored retaining jurisdiction, they would be outweighed by those favoring abstention. Accordingly, the court abstains

pursuant to Section 1334(c)(1) and remands this suit to state court. *See* 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."); *U.S. Brass Corp.*, 110 F.3d at 1267 (noting that abstention can "take[] the form of a dismissal or a remand, rather than merely of a stay of the proceedings before the district court").

## Conclusion

Klairmont's and WAS Niles's motions to remand and/or abstain are granted. The court abstains pursuant to 28 U.S.C. § 1334(c)(1) and remands this suit to the Circuit Court of Cook County, Illinois pursuant to 28 U.S.C. § 1452(b). B. Riley's motion to transfer the suit to the Southern District of Texas is denied as moot.

November 30, 2021

_____
United States District Judge